## NOEL v
## YOUNGSTOWN MUNICIPAL RY CO

Ohio Appeals, 7th Dist, Mahoning Co

Decided Oct 19, 1934

Charles S. Miller, and William E. Lewis, Youngstown, for plaintiff in error.

Harrington, Huxley & Smith, Youngstown, for defendant in error.

KLINGER and GUERNSEY, JJ, (3rd Dist) sitting by designation.

## OPINION

By ROBERTS, J.

In the consideration of the alleged error in the instruction given, and as pertinent for what will hereafter be said with regard to the evidence in this case, several citations will be made.

In the case of **Industrial Commission v Franken, 126 Oh St, 299,** the second paragraph of the syllabus reads:

"The term 'injury' as used in the Workmen's Compensation Law of Ohio comprehends only such injuries as are accidental in their origin and cause."

In the opinion it is said:

"However, unless the entire theory of the Workmen's Compensation Law which has obtained in this state for many years is to be disregarded and the many decisions of this court involving the questions are to be reversed, it must be held that the term 'injury' as used in the Ohio Workmen's Compensation Law comprehends only such injuries as are accidental in their origin and cause. This has been the holding of this court since the case of **Industrial Commission v Brown, 92 Oh St, 309,** and the doctrine therein stated has been reiterated in **Industrial Commission v Roth, 98 Oh St, 34; Industrial Commission v Cross, 104 Oh St, 561; Renkel v Industrial Commission, 109 Oh St, 152, and Industrial Commission v Russell, 111 Oh St, 692.**"

It may be stated that it was the contention of the defendant that the plaintiff, as shown by the evidence in this case, sustained no accidental injury which was compensable under the law. In the case of **Industrial Commission v Russell, 111 Oh St, 692-694,** it is said:

"There seems not to have been an accidental occupational disease, and it is conceded that there was no traumatic injury, or any accident, which caused this unfortunate condition, but rather the prolonged action of ultra-violet rays coming from a silver-tipped carbon point, which by slow, but sure, process injured the optic nerve and resulted in optic atrophy."

In **Industrial Commission v Burckard, 112 Oh St, 372,** it is said on page 373:

"However, in the light of **Industrial Commission v Roth, 98 Oh St, 34,** there is sufficient in this record to show that the decedent's death was occasioned by or followed as a result of physical injury; that it was not occasioned in the natural and ordinary course of his employment, but by an unusual and extraordinary happening in the course of such employment, which was both accidental and unforseen, to-wit, an accident 'due to faulty equipment and accidental mishandling of materials'. * * * There is sufficient in the record to justify the conclusion of the Court of Common Pleas and its affirmance by the Court of Appeals that the death of Charles Burckard was the result of an injury accidental in character."

In the case of **Industrial Commission of Ohio v Middleton, 126 Oh St, 212,** it is said in the opinion, on page 216:

"From the undisputed testimony Bell's palsy is a disease. It is not an occupational disease. There is no testimony in the record from which a reasonable inference can be drawn to the effect that it was the result of a 'sudden happening', but, rather, was the result of the prolonged heavy lifting and exposure, and therefore not compensable."

In the case of **Industrial Commission v Lambert, 126 Oh St, 501-504**, it is said in the opinion:

"There is absolutely no evidence of an accident or a specific injury on February 22, 1930. If the work had anything to do with claimant's condition, it was simply because the nature of the employment caused 'pressure of that hot iron handle on his hand,' and this in turn developed an inflammatory process. There was nothing unusual in the nature of claimant's employment on February 22nd, 1930. * * * There is no testimony in this record from which a reasonable inference can be drawn to the effect that claimant's condition was the result of 'sudden happening', but rather was the result of the prolonged carrying of the ladle of molten iron and the incidental exposure to the heat therefrom."

A consideration of the authorities hereinbefore quoted from leads to the conclusion that there was no error in the giving of request No. 1 complained of. The second request was mentioned, the giving of which was not claimed to be error. It undertakes to state under what conditions the plaintiff would not be entitled to recover; that is, if he was suffering from any impairment of physical condition which was caused or contributed to in connection with his employment by The Youngstown Municipal Railway Company, in no other way than by his performance of his regular and customary duties as a bus driver, that he is not entitled to compensation.

This was also a correct statement of settled law in this state and will become more pertinent with reference to what is hereinafter stated regarding the injuries complained of by the plaintiff.

It is claimed that prejudicial error resulted from the admission of evidence by the court, claimed to have been incompetent, as follows: In the testimony of J. A. Harvey, an official of the defendant company:

"Q. And when he left the services was he discharged or did he leave?
Mr. Miller: I object.

Court: Overruled.
Mr. Miller: Exception.
A. Your question was that was he discharged?
Q. Was he or was he not, that is my question?
A. Yes, he was.
Mr. Miller: I ask to have the answer excluded.
Court: Overruled.
Mr. Miller: Exception.
Q. What was the occasion?
Mr. Miller: I object.
Court: Overruled.
Mr. Miller: Exception.
A. There were two reasons. One was drinking too much and not showing up for work and the second was not giving, well, missing fares.
Mr. Miller: Ask to have the answer excluded.
Court: Overruled.
Mr. Miller: Exception."

Counsel had a right to inquire of Mr. Harvey whether or not the plaintiff left the services voluntarily or was discharged. The question "What was the occasion", and the answer, "There were two reasons. One was drinking too much and not showing up for work, and the second was not giving, well, missing fares," was incompetent, and it is not conceivable that it could have been asked presumably with knowledge that the answer would be for any purpose than to disgrace the plaintiff and lessen the respect of the jury for him and its belief in his testimony.

This court would be disposed to reverse this case upon this complained error but another contingency now develops in the evidence, and that is whether or not the plaintiff, by his evidence in this case, has shown a cause of action or a right to recover. If he has not, then the asking of this question and the giving of the answer would not be reversible error.

Attempt will not be made to go in detail into the evidence. Noel claimed that he worked for the defendant company for four years, commencing in January, 1926; that on the routes over which he traveled the pavement was somewhat rough and jolty; that after continuing in the service for several years he became to a considerable extent disabled. With regard to the condition of the bus his evidence varies from the allegations in the petition, he stating in the evidence that the cushion of his seat was broken down; that is, that the springs, as understood, had lost their resiliency, and also that the back of the

seat caused him some inconvenience, and that at one time a sore spot developed under his shoulder blade which caused him considerable inconvenience. That, however, does not seem to be considered as an injury for which the plaintiff seeks to recover. It is not claimed that there was an open wound or a breaking of the skin. The real condition of which he complains, and which was testified to by several doctors, was a stiffening and laming of his back in the sacroiliac region, which caused him disability and pain; that his back got stiff; that he had difficulty in lying down and greater difficulty when he attempted to rise. The testimony of the doctors is to the effect that this condition in his back was caused by a focal infection, and while it is to some extent admitted on examination under hypothetical questions that the long continued riding in the bus, the jolting he received in so doing might cause this condition or be a contributing cause, but the belief of the doctors, as adduced from the evidence was that this was caused by a focal infection. He had a bad case of pyorrhea, had teeth removed, doctors speak of a condition discovered resulting from pleurisy, but in the end and over all the evidence does not indicate that he received an accidental injury or that trauma resulted from any specific or particular injury; that such disability as he has or complained of having during his service or after its discontinuance was the gradually accumulative result of the work which he was doing. If the work had anything to do with his condition so that the second request as given becomes pertinent, in that his disability was received "in no other way than by his performance of his regular and customary duties," and was not in any sense an occupational injury, under recent decisions regarding the so-called scintilla rule it can not be said that the result herein indicated was one upon which reasonable minds would differ.

It may be a matter of some doubt, although not raised, as to whether or not the petition itself really stated a cause of action. In any event, the evidence did not justify the allegation that he sustained an injury upon a certain day which was the basis of an alleged right to recover in the petition.

The conclusion is thus reached that the plaintiff did not make or sustain a cause of action upon the evidence in the case, and that the verdict in favor of the defendant company was right. The error in the introduction of incompetent testimony then becomes unimportant and the judgment of the Court of Common Pleas is affirmed.

Judgment affirmed.

KLINGER and GUERNSEY, JJ, concur in the judgment.